IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHAUN ZERBE,                          :
                                      :
         Plaintiff,                   :          No. 4:07-CV-413
                                      :
         v.                           :          Judge Jones
                                      :
ROBERT J. KARNES and                  :
JACKIE MATIAS,                        :
                                      :
         Defendants.                  :

## MEMORANDUM

## January 25, 2008

## THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:

Pending before this Court is a Motion to Dismiss and for Summary

Judgment, filed by Defendants Robert J. Karnes and Jackie Matias (collectively,

"Defendants") on May 25, 2007.  (Rec. Doc. 12).  For the reasons that follow, the

Motion to Dismiss and for Summary Judgment shall be granted.

## PROCEDURAL HISTORY:

On March 5, 2007, Plaintiff Shaun Zerbe ("Plaintiff" or "Zerbe") filed a

Complaint in the above-captioned action.  (See Rec. Doc. 1).

On May 25, 2007, Defendants filed the instant Motion to Dismiss and for

Summary Judgment ("the Motion"), as well as a supporting brief and other

1

supporting materials.  (See Rec. Docs. 12-14).  As the Motion and supporting

submissions were originally mailed to a previous address for Plaintiff, the briefing

on this Motion was somewhat delayed.  Notably, in our Orders addressing that

issue, Plaintiff was also explicitly advised that we would treat at least a portion of

the Motion as one seeking summary judgment, and that, accordingly, he should

submit any materials he wished in opposition thereto.  (See Rec. Docs. 15, 18).

Plaintiff then timely submitted his materials opposing the Motion (see docs. 19-

21), and Defendants timely filed their reply brief (doc. 22).  Thus, the Motion is

now ripe for our disposition.

## STANDARDS OF REVIEW:

### A.    MOTIONS TO DISMISS:

In considering a motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a

court must "accept as true all of the allegations in the complaint and all reasonable

inferences that can be drawn therefrom, and view them in the light most favorable

to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir.

1997).  The court should "not inquire whether the plaintiffs will ultimately prevail,

only whether they are entitled to offer evidence to support their claims."  Nami v.

Fauver, 82 F.3d 63, 65 (3d Cir. 1996).  A Rule 12(b)(6) motion should be granted

"if it appears to a certainty that no relief could be granted under any set of facts which could be proved . . . [b]ut a court need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse, 132 F.3d at 906.

## B.   MOTIONS FOR SUMMARY JUDGMENT:

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial." Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992). Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact finder could draw from them. See Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. See id. at 325.

Rule 56 provides that, where such a motion is made and properly supported,

the non-moving party must then show by affidavits, pleadings, depositions,

answers to interrogatories, and admissions on file, that there is a genuine issue for

trial.  See Fed. R. Civ. P. 56(e).  The United States Supreme Court has commented

that this requirement is tantamount to the non-moving party making a sufficient

showing as to the essential elements of their case that a reasonable jury could find

in its favor.  See Celotex, 477 U.S. at 322-23 (1986).

It is important to note that "the non-moving party cannot rely upon

conclusory allegations in its pleadings or in memoranda and briefs to establish a

genuine issue of material fact."  Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511

(3d Cir. 1994) (citation omitted).  However, all inferences "should be drawn in the

light most favorable to the non-moving party, and where the non-moving party's

evidence contradicts the movant's, then the non-movant's must be taken as true."

Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d

Cir. 1992) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact."  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "As to materiality, the

substantive law will identify which facts are material."  Id. at 248.  A dispute is

4

considered to be genuine only if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  Id.

## STATEMENT OF MATERIAL FACTS:

In light of the nature of the pending Motion and the circumstances

surrounding the briefing thereon, our recitation of the facts underlying this action is

based upon our thorough review of the contents of each of the following:

Plaintiff's Complaint (doc. 1), the parties' Statements of Material Facts (docs. 13,

21), Plaintiff's Response (doc. 19) to the pending Motion, and the record submitted

by Defendants (see doc. 12).  As required by the applicable standards of review,

we have viewed all facts and inferences therefrom in the light most favorable to

Plaintiff.  Additionally, pursuant to Haines v. Kerner, 404 U.S. 519, 520 (1972),

we have also liberally construed this pro se Plaintiff's allegations.

The facts underlying this action relate to two incidents in which Plaintiff,

then an inmate at the Lebanon County Correctional Facility ("LCCF"), was

allegedly assaulted and then denied appropriate medical treatment.  By way of

background, Plaintiff's description of these two events in the Complaint follows:

1.     On December 17th, 2006, at the request of Warden Robert Karnes,
       [the] Dauphin County CERT team came to [the] Lebanon County
       Correctional Facility in an attempt to assist and train L.C.C.F. officers
       during a re-location process.  The CERT team used intimidation and
       acts of violence to re-locate otherwise compliant inmates that [sic]
       were classified as disciplinary status.  During this re-location process I

> was one of many inmates assalted [sic], then denied medical assistance.
>
> 2.      On January 9th, 2007, I was assalted [sic] by Omar Rodriguez and my jaw was broken.  I was seen by Nurse Matias that night and was told everything was fine.  After multiple requests to be seen by a doctor were denied, my mother called the Warden.  Six days after the incident I was taken for x-rays.  Two days later a doctor rushed to wire my jaw.

(Rec. Doc. 1 at 2).

Taking the events at issue in turn, we begin with the December 17, 2006 incident.  In Plaintiff's Statement of Facts (doc. 21),[1] he alleges a number of additional details surrounding the events of December 17, 2006, such as being placed in a cell with "no underclothing," complaining about the conditions, and being physically punished therefor.  Id. at ¶¶ 5-11.  However, for the reasons outlined below, the only potentially relevant additional allegation is that "by the authority of Defendant Karnes, Correctional Emergency Response Team (hereinafter "CERT") 'attempt[ed] to assist and train LCCF officers during a re-location process.'"  Id. at ¶ 5 (emphasis added).

Turning, then, to the January 9, 2007 incident, we initially note that the parties agree on many details related thereto: Plaintiff was assaulted that day by

---

[1] Defendants' Statement of Material Facts (doc. 13) does not reference the December 17, 2007 incident.  However, Defendants' briefing (docs. 14, 22) on all potential claims arising therefrom provides the explanation therefor: Defendants seek dismissal of all such claims under Federal Rule of Civil Procedure 12(b)(6).

another inmate, apparently Omar Rodriguez.  (Rec. Docs. 1 at 2; 21 at ¶ 12; 13 at ¶

2).  During the assault, Plaintiff's jaw was injured, and, thus, on January 9, 2007,

he sought medical assistance from Jackie Matias ("Nurse Matias"), a Licensed

Practical Nurse.  (Rec. Docs. 1 at 2; 12-3 at ¶ 5; 13 at ¶ 2).  Although Plaintiff was

not seen by a doctor on January 9, 2007, after several subsequent visits to the

medical unit, Plaintiff was taken to Good Samaritan Hospital for x-rays on January

15, 2007.  (Rec. Docs. 1 at 2; 12-3 at ¶ 12; 13 at ¶ 8).  The x-rays revealed that

Plaintiff had a broken jaw, and on January 17, 2007, Plaintiff was seen by Dr.

Melnick, a private ear, nose, and throat specialist.  (Rec. Docs. 21 at ¶¶ 18-19; 12-3

at ¶¶ 13-14, Exhs. C, D).  Dr. Melnick suggested a consult with Dr. Balaci.  (Rec.

Docs. 21 at ¶ 19; 12-3 at ¶ 14, Exh. D).  On January 18, 2007, approximately nine

(9) days after Plaintiff's jaw injury, Dr. Balaci treated the jaw with fixation.  (Rec.

Docs. 21 at ¶ 20; 12-3 at ¶ 15).

Further, given the record before us, the following material facts are also

undisputed:[2] January 9, 2007 was the only date on which Nurse Matias saw

Plaintiff for medical treatment relating to his jaw injury.  (Rec. Doc. 12-3 at ¶ 6).

After her evaluation of Plaintiff on January 9, 2007, in which he reported jaw and

---

[2] Unless otherwise noted, none of the statements within the paragraph are controverted by
Plaintiff's submissions opposing the Motion.

tooth pain, and she observed a swollen jaw, Nurse Matias provided Plaintiff with

Motrin and ice in an effort to treat the pain in his jaw.[3]  Id. at ¶ 5, Exh. B at 10.  On

January 10, 2007, Plaintiff returned to the medical unit, complaining of jaw pain,

swelling, and difficulty chewing.  Id. at ¶ 8, Exh. B at 9.  However, Plaintiff was

able to talk and his jaw was not dislocated.  Id. at ¶ 9, Exh. B at 9.  Thus, Plaintiff

was again given Motrin for his pain.  Id. at ¶ 10, Exh. B at 9.  On January 13, 2007,

Plaintiff went to the medical unit again, still reporting jaw pain; accordingly, he

was once again given Motrin.  Id. at ¶ 11, Exh. B at 9.  Finally, following the

fixation of Plaintiff's jaw, his diet at the prison was adjusted to be "consistent with

his treatment needs."[4]  Id. at ¶ 16.

## DISCUSSION:

The instant Motion seeks dismissal of Plaintiff's Complaint in its entirety.

(See Rec. Doc. 12 at 5).  In support of such dismissal, Defendants rely upon Rules

---

[3] Plaintiff's Statement of Facts denies that "treatment" commenced the day of the assault. (Rec. Doc. 21 at ¶ 16).  However, Plaintiff's Statement of Facts also provides that "Defendant Matias denied adequate medical attention by disallowing Plaintiff to be seen by a Doctor or be taken to a hospital," id. at 15 (emphasis added), which indicates that some sort of medical attention was afforded to Plaintiff.  Thus, in light of Nurse Matias's affidavit stating that she afforded Plaintiff Motrin and ice, as well as her contemporaneous treatment notes which confirm as much, we think that Plaintiff's denial of "treatment" on January 9, 2007 can only be due to his apparent exclusion of the provision of Motrin and ice from the definition thereof.

[4] For the reasons outlined below, the following is immaterial.  However, in the interest of completeness, we note that Plaintiff's Statement of Facts (doc. 21 at ¶ 21) alleges that Defendant Karnes denied Plaintiff a remedy for all grievances that he filed as a result of Nurse Matias' actions.

12(b)(6) and 56 of the Federal Rules of Civil Procedure.  Specifically, Defendants contend: 1) Plaintiff's claims against Robert Karnes ("Warden Karnes") should be dismissed because Plaintiff has not alleged any personal involvement of the Warden in any violation of Plaintiff's rights; 2) Plaintiff's claims as to denial of medical assistance with regard to the alleged December 17, 2006 incident should be dismissed because Plaintiff has not alleged any serious medical need; 3) summary judgment in favor of Nurse Matias should be entered with respect to Plaintiff's claims that she was deliberately indifferent to his medical needs following the January 9, 2007 assault because no deliberate indifference can be found on this record; and 4) to the extent that Plaintiff has pled any claim(s) for failure to protect him from the January 9, 2007 assault, the same should be dismissed because Plaintiff's allegations fail to state a claim.  (Rec. Doc. 14).

In response, Plaintiff offers a number of arguments.  Taking Plaintiff's arguments in the largely[5] same order as that outlined above, Plaintiff asserts: 1) "[D]efendants were personally involved in the denial of adequate medical care;" 2) "Defendants Karnes and Matias had knowledge of serious medical need and failed to act;" 3) "Defendant[s] Karnes and Matias were deliberately indifferent to

---

[5] Plaintiff's submissions opposing the Motion appear to lack any counter-argument to Defendants' fourth argument.

9

Plaintiff's serious medical need;" and 4) "[i]n the alternative, now is not the time to rule on a motion for summary judgment as the discovery process has not been completed."[6]  (Rec. Doc. 20 at 4, 9, 10, 12).

We now turn to the issues outlined above in turn.

## I.    Warden's Alleged Involvement in Both Alleged Incidents

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Notably, claims brought under § 1983 cannot be premised on a theory of *respondeat superior*.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

---

[6] As to Plaintiff's "alternative" argument, we note that it is not meritorious for at least two (2) reasons.  First, somewhat early requests for summary judgment, such as Defendants', are generally permissible under the Federal Rules of Civil Procedure.  Specifically, following the changes to the Rules which became effective on December 1, 2007, and which were intended to be stylistic only, Rule 12(d) affords Defendants the same option that Rule 12(b) previously did, that is, to seek summary judgment at this stage.  See Fed. R. Civ. P. 12(d).  Second, to the extent that Plaintiff is arguing that the seeking of summary judgment under these particular circumstances is improper, we note that as Defendants aptly assert in their reply brief (doc. 22 at 3-4), Plaintiff has failed to state what discovery he would need to more fully respond to the pending Motion.  Moreover, it appears to us as if no additional discovery would have helped Plaintiff avoid dismissal of this action.

Thus, herein, we will not further address this argument.

Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences that underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . .  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Applying these principles to the instant action, it is clear that Plaintiff's Complaint (doc. 1) fails to allege the requisite personal involvement of Warden Karnes in any of Plaintiff's alleged civil rights violations, and, thus, fails to state a claim against Warden Karnes.  Indeed, Plaintiff's Complaint makes only two (2) references to the Warden.  First, with regard to the December 17, 2006 incident, the Complaint alleges that the CERT team, which alleged assaulted Plaintiff, came to LCCF "at the request of Warden Robert Karnes . . . ."  (Rec. Doc. 1 at 2).  A finding of Warden liability based thereon would be based solely on *respondeat superior*, and that is simply is not permissible.  Second, with regard to the January 9, 2007 incident, Plaintiff's Complaint alleges that "after multiple requests to be seen by a doctor were denied, my mother called the Warden."  Id.  However, the

11

Complaint goes on to indicate that shortly thereafter, he was taken for x-rays, and then his jaw was treated with fixation.  Thus, rather than suggesting that the Warden ordered or otherwise ensured that Plaintiff was denied medical treatment for a non-medical reason, Plaintiff's own words suggest that, if indeed his mother did call the Warden, the same actually facilitated Plaintiff's treatment.  Moreover, even if Plaintiff's mother called the Warden, and the Warden failed to facilitate Plaintiff's treatment, Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993), prevents liability.  See id. at 69 (noting that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff).  Accordingly, there is simply no basis on which Warden Karnes could be held liable for any alleged violations of Plaintiff's rights arising out of either the December 17, 2006 or January 9, 2007 incidents.

Further, Plaintiff's procedurally deficient attempts to incorporate two (2) additional allegations against Warden Karnes indicate that granting Plaintiff leave to amend as to these claims would be futile.  In his Statement of Facts (doc. 21), Plaintiff first expands on his original allegation as to the Warden's role in bringing the CERT team to LCCF, stating that "by the authority of Defendant Karnes," the CERT team went to LCCF; Plaintiff next indicates that Defendant Karnes denied

Plaintiff's administrative grievances related to treatment of Plaintiff's injury from the January 9, 2007 incident.  Id. at ¶¶ 5, 21.  As Plaintiff does not assert that Warden Karnes directed the CERT team to use excessive force, any liability founded on the first allegation would clearly once again be impermissibly based on the doctrine of *respondeat superior*.  As to Plaintiff's second allegation, we note that:

> the federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure. When the claim underlying the administrative grievance involves a constitutional right, the prison's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.

Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991).  Thus, despite the Warden's denial of Plaintiff's grievances, he was, by virtue of apparently exhausting his administrative remedies, permitted to bring his alleged claims arising from the January 9, 2007 incident before this Court.  Thus, the Warden's denial of the grievances is not a basis for liability.

Because Plaintiff's allegations related to Warden Karnes are grounded in the impermissible theory of *respondeat superior*, and because Plaintiff's attempted additional allegations demonstrate the futility of amendment of such claims, we will dismiss with prejudice all of Plaintiff's claims against Warden Karnes.

## II.    Alleged Deliberate Indifference to Medical Need Arising out of Alleged

13

**December 17, 2006 Incident**

Initially we note that as Plaintiff's allegations regarding Warden Karnes fail to indicate the requisite personal involvement in either the events or results of the December 17, 2006 and January 9, 2007 incidents, and as Plaintiff's allegations as to Nurse Matias make no mention of her involvement in the December 17, 2006 incident or resulting events, we fail to see how Plaintiff's Complaint states a claim for deliberate indifference arising out of the alleged denial of medical assistance following the December 17, 2006 incident.  However, in the interest of caution, we also consider Defendant's second argument, which is related thereto.  To be clear, as noted above, Defendant argues that the Complaint fails to state a deliberate indifference claim arising out of the alleged denial of medical care following the December 17, 2006 incident because Plaintiff does not allege a serious medical need.

In <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Supreme Court recognized that under the Eighth Amendment, the government has an "obligation to provide medical care for those whom it is punishing by incarceration."  <u>Id.</u> at 103. However, a constitutional violation does not arise unless there is "deliberate indifference to <u>serious medical needs</u> of prisoners" that constitutes "unnecessary and wanton infliction of pain."  <u>Id.</u> at 104 (citation omitted).  A later decision by

14

the Supreme Court established that the proper analysis for deliberate indifference is

whether a prison official "acted or failed to act despite his knowledge of a

substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994).

More recently, the Third Circuit has described the requirements for a finding

of violation of a prisoner's constitutional rights to medical care as follows: the

"evidence must show (i) a serious medical need, and (ii) acts or omissions by

prison officials that indicate deliberate indifference to that need." Natale v.

Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (emphasis

added).  "A serious medical need is one that 'has been diagnosed by a physician as

requiring treatment or . . . is so obvious that a lay person would easily recognize

the necessity for a doctor's attention.'" Santiago v. Guarini, 2004 U.S. Dist.

LEXIS 12921, at *3-4 (E.D. Pa. 2004) (quoting Monmouth County Corr. Inst.

Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)) (emphasis added).

Applying these principles, Plaintiff's Complaint fails to state a claim for

deliberate indifference arising out of the December 17, 2006 incident because it

does not allege a serious medical need. See id. at 2.  Rather, Plaintiff's Complaint

makes only a general reference to being assaulted and denied medical treatment

therefor.

Moreover, review of Plaintiff's procedurally insufficient additional

allegations in the Statement of Facts (doc. 21) reveals that even were these

allegations to be added to a complaint, such amendment would be futile.  Indeed,

Plaintiff's allegations that the CERT team choked him and grabbed him behind the

ear, resulting in back and neck injuries, fail to satisfy either criteria: having been

diagnosed by a doctor as requiring treatment or being so obvious that a lay person

would recognize the need for medical attention.  As to the first option, Plaintiff

contends that no medical assistance was provided, which necessarily suggests that

no doctor thought the injuries required treatment.  As to the second, it is

unreasonable to think that a lay person would find that unobservable neck and back

injuries are so obvious as to require medical attention.

Accordingly, we will dismiss with prejudice Plaintiff's deliberate

indifference claims arising out of the December 17, 2006 incident.

## III.    Nurse Matias' Alleged Deliberate Indifference to Medical Need Arising out of January 9, 2007 Incident

Naturally, Estelle and Farmer also apply to Plaintiff's claim that Nurse

Matias was deliberately indifferent to his medical needs following the January 9,

2007 incident.  However, because this deliberate indifference claim is against a

health care provider, a few additional principles are also relevant.  Notably, an

allegation that a physician or a medical department "has been negligent in

diagnosing or treating a medical condition does not state a valid claim of medical

16

mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." <u>Estelle</u>, 429 U.S. at 106.  Thus, if inadequate treatment results simply from an error in medical judgment, it may constitute negligence, but it does not constitute a constitutional violation.  <u>See</u> <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993).

Here, the record demonstrates, and Plaintiff's Complaint concedes, that on or about January 18, 2007, approximately nine (9) days after the January 9, 2007 incident, Dr. Balaci treated Plaintiff's broken jaw with fixation.  Additionally, although Plaintiff's Complaint does not contain specific allegations relating to the time period between his initial January 9, 2007 visit to the medical unit for this injury and the date of fixation, it appears to confirm the information contained within the record provided by Defendants:  Because Plaintiff was unsatisfied with the initial treatment for his injury, pain medication and ice, he returned to the medical unit repeatedly.  Consequently, within a matter of days, Plaintiff was sent to an outside hospital for x-rays, an outside physician for an evaluation, and a second outside doctor for corrective treatment.

On this record, we find that no reasonable jury could return a verdict in favor of Plaintiff on his deliberate indifference claims related to the medical treatment received following his January 9, 2007 injury.  <u>See</u> <u>United States ex rel. Walker v.</u>

17

Fayette County, 599 F.2d 573, 575 n.2 (noting that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law"); Lindsay v. Dunleavy, 177 F. Supp. 2d 398 (E.D. Pa. 2001) (finding that failure to initially order an x-ray or diagnose a broken jaw, resulting in fixation fourteen (14) days after the injury, did not constitute deliberate indifference).  As to Nurse Matias specifically, we find that her decisions not to order an x-ray or to seek an immediate consult with a physician, and her failure to diagnose Plaintiff's broken jaw, are all the result of her medical judgment as to the appropriateness thereof. Under Durmer, Plaintiff's objections to Nurse Matias' medical judgments simply do not constitute a constitutional violation.  Accordingly, Nurse Matias is entitled to summary judgment on this claim.

## IV.     Alleged Failure to Protect Plaintiff from January 9, 2007 Incident

Finally, we note that although Plaintiff's Complaint does not appear to raise such a claim on its face, in the interest of caution, we will analyze Defendants' argument that to the extent that a failure to protect claim relating to the January 9, 2007 incident could be inferred from the Complaint, it fails.  As already noted, Plaintiff's briefing on the Motion does not appear to oppose this argument.

However, rather than granting Defendants' Motion with respect thereto on the ground that it is unopposed, we shall dispose of any such claim on the merits.

In order for a prisoner to succeed on an Eighth Amendment claim arising out of prison officials' failure to protect him from violence at the hands of others, the prisoner must show:

> (1) he was incarcerated under conditions posing a substantial risk of serious harm;
> (2) the defendant was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists;'
> (3) the defendant actually drew this inference; and
> (4) the defendant deliberately disregarded the apparent risk.

Greenfield v. County of Lackawanna, 2006 U.S. Dist. LEXIS 51580, at *8 (M.D. Pa. 2006) (quoting Farmer, 511 U.S. at 834-37).  Moreover, neither confining prisoners in the same location where an altercation took place nor knowing that some prisoners have convictions for violent crimes is sufficient to support an inference of deliberate indifference to a serious harm.  Id. at *11.

As alleged in the Complaint, and after review of all additional allegations contained in Plaintiff's responses to the Motion, no cognizable claim for failure to protect, against either Warden Karnes or Nurse Matias, exists.  We so find because Plaintiff has not alleged any of the four requisite conditions: 1) that the conditions under which he was incarcerated posed a substantial risk of injury; 2) that either Warden Karnes or Nurse Matias were aware of any facts from which they could

19

conclude that Omar Rodriguez was going to assault Plaintiff; that either of these officials drew an inference of serious harm on the basis of said facts; or 4) that either Defendant deliberately disregarded any such risk of harm.  Moreover, in light of the procedurally deficient allegations with which Plaintiff attempted to bolster his claims, we find that any amendment as to this particular claim would be futile.

Thus, to the extent alleged, Plaintiff's failure to protect claims shall be dismissed with prejudice.

**CONCLUSION:**

For all of the aforestated reasons, Defendants' Motion to Dismiss and for Summary Judgment (doc. 12) shall be granted, and judgment shall be entered in favor of all Defendants.  An appropriate Order closing this case shall issue on today's date.